**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JAMES GRAY, | MDL No.: 2873 |
| Plaintiff, | Master Docket No.: 2:18-mn-2873 |
| v. | JUDGE RICHARD M. GERGEL |
| 3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING, CO.); AGC CHEMICALS AMERICAS, INC.; AGC, INC. (F/K/A ASAHI GLASS CO., LTD.); ARCHROMA U.S., INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CLARIANT CORPORATION; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORPORATION, E.I. DU PONT DE NEMOURS AND COMPANY,; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP; and JOHN DOE DEFENDANTS 1-49, | Civil Case No.: |
| | DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CASE MANAGEMENT ORDER NO. 3 |
| Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff James Gray, by and through the undersigned counsel, brings this action against

Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC, Inc. (f/k/a Asahi

Glass Co., Ltd.), AGC Chemical Americas, Inc, Archroma U.S., Inc., Arkema Inc., BASF

Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., The

Chemours Company, The Chemours Company FC, LLC, Clariant Corporation, Corteva, Inc.,

DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and Company, Tyco Fire

1

Products, LP (individually and as successor-in-interest to The Ansul Company) and John Doe Defendants 1-49, (collectively, "Defendants"). Plaintiff hereby alleges, upon information and belief, as follows:

## I.     SUMMARY OF THE CASE

1.     Plaintiff brings this action against Defendants to recover damages for personal injuries caused by exposure to per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS") included in aqueous film-forming foam ("AFFF") used for firefighting and firefighter training.

2.     AFFF is designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.     This Complaint refers to AFFF, PFOA, PFOS, and PFAS compounds collectively as "Fluorosurfactant Products."

4.     PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain. PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

5.     At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluuourinated chemicals contained in AFFF.

6.     Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection,

training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.     Due to widespread PFAS contamination caused by Defendants' Fluorosurfactant Products, including the contamination of Plaintiff's drinking water supplies, Plaintiff has suffered serious personal injuries set forth in detail below. Plaintiff's injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

8.     Plaintiff, as a resident who worked or resided in the contaminated areas, has been unknowingly exposed for many years to dangerous PFAS levels.

9.     Plaintiff's unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiff's injuries.

10.     Plaintiff files this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to the injury;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.     PARTIES

### A. Plaintiff

11.     Plaintiff James Gray is a citizen and resident of Woburn, Massachusetts. From approximately 1985 to 2025, Plaintiff James Gray was regularly exposed to PFAS through drinking water at residences in Winchester, Massachusetts; Plymouth, Massachusetts; and Woburn, Massachusetts.

12.     On or about July 2024, Plaintiff James Gray was diagnosed with clear cell renal carcinoma at Tufts Medical Center Cancer Center in Boston, Massachusetts, and subsequently

underwent a radical left nephrectomy performed at Tufts Medical Center located in Boston, Massachusetts, and immunotherapy treatment at Tufts MC Cancer Center at Stoneham in Stoneham, Massachusetts.

## B. **Defendants**

13.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiff was exposed.

14.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

15.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

16.    **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

17.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

18.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma

4

Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

19.     **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

20.     **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

21.     **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

22.     **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

23.     **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

24.     **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

25.     **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

26.     **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a

DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

27.     Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

28.     Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

29.     **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

30.     **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

31.     **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

32.     In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its

Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

33.     **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

34.     **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

35.     Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

36.     Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

37.     Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

38.     All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of

the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of Massachusetts.

39.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

40.     The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.     JURISDICTION & VENUE

41.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants. The Plaintiff is a resident and citizen of Massachusetts, but no Defendant is a citizen of Massachusetts nor has its principal place of business in Massachusetts.

42.     Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3").  Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the District of Massachusetts. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the District of Massachusetts as the "Home Venue" as this case may have originally been filed there.

43.     Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in this judicial

district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.     FACTUAL ALLEGATIONS

### A. __The PFAS Contaminants at Issue: PFOA and PFOS__

44.     Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

45.     PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

46.     PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

47.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf  (last accessed April 8, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at

9

48.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

49.     Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

50.     The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

51.     The EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[5]

---

https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed April 8, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, *Technical Fact Sheet – Perflurooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at https://19january2021snapshot.epa.gov/fedfac/technical-fact-sheet-perfluorooctane-sulfonate-pfos-and-perfluorooctanoic-acid-pfoa-0_.html (last accessed April 8, 2025).

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed April 8, 2025).

[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at

52.     In April, 2024, the EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.  The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B.  Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

53.     Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

54.     Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

55.     The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

56.     When used as the Defendants intended and directed, AFFF causes PFOA, PFOS,

---

https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed April 8, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed April 8, 2025).

and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters). When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds.

57.    Notably, AFFF can be made without PFOA and PFOS. Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

58.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiff's injury.

**C.  Defendants' Knowledge of PFOA and PFOS Hazards**

59.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic components of AFFF; and (2) when AFFF is used per the instructions given by the manufacturer, users, handlers, and nearby bystanders are exposed to PFOA and PFOS by inhalation, ingestion, or skin absorption.

60.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

61.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all exposures had ceased.[7]

---

[7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

62.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

63.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

64.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

65.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

66.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware,

---

[8] *See* DuPont, *C-8 Blood Sampling Results,* available at
https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5O
Dk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=
2.26293428.885409355.1683587869-581783177.1682689989 (last accessed April 8, 2025).

[9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), Office of
Minnesota Attorney General, Exhibit List, No. 1313,-available at
https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1313.pdf (last accessed April 8,
2025).

and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

67.     On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that harmed Plaintiff.

68.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

69.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

70.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the

---

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed April 8, 2025).

[11] *Id.*

[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at

serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

71.     In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

72.     Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF that degraded into or released PFOA and/or PFOS in everyday handling, training environments, and real-life fire emergency scenarios; (c) AFFF containing PFOA and PFOS are dangerous to human health when used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF to prevent exposure to PFOA and PFOS.

73.     Notwithstanding this knowledge, Defendants negligently and carelessly: designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; designed, manufactured, marketed, purchased, supplied, and/or sold AFFF; issued instructions on how AFFF should be used and disposed of; failed to recall and/or warn the users of AFFF of the dangers to human health that result from the standard use, handling, and disposal of these products; negligently designed products

---

http://www.c8sciencepanel.org/prob_link.html (last accessed April 8, 2025).

[13]   *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed April 8, 2025).

containing or degrading into PFOA and/or PFOS; and further failed and refused to issue the appropriate warnings to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

74.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiff suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS. As a direct and proximate result, Plaintiff incurred substantial harm, both economic and non-economic.

75.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

**D.    The Impact of PFOA and PFOS on the Plaintiff**

76.    Plaintiff has been significantly and continuously exposed to PFOA and PFOS over many years as a result of the Defendants' conduct.

77.    Plaintiff has been diagnosed with clear cell renal carcinoma, as set forth above.

78.    Plaintiff's cancer was caused by Defendants' Fluorosurfactant Products.

79.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiff's exposure to PFOA and PFOS, which caused Plaintiff's injuries.

80.    Therefore, as a direct and proximate result of Defendants' tortious conduct as discussed in this complaint, Plaintiff was damaged in the following ways:

a.    Plaintiff suffered physical pain and mental anguish;

b.    Plaintiff incurred hospital, medical, pharmaceutical and other expenses;

c.    Plaintiff experienced undue stress related to Plaintiff's diagnosis, medical condition, and uncertainty about Plaintiff's prognosis.

## FIRST CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY-
## DEFECTIVE DESIGN

81.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

82.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

83.     All of Defendants' AFFF products were manufactured for placement into trade or commerce.

84.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

85.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

86.     By manufacturing and selling PFAS-containing AFFF, Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

87.     Defendants breached that warranty as PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

   a.     PFOA and PFOS escape from AFFF when used, stored, and/or handled in a foreseeable and intended manner;

   b.     Individuals such as Plaintiff may be exposed to PFOA and PFOS released from AFFF via inhalation, ingestion, or skin absorption;

   c.     Exposure to PFOA and/or PFOS is associated with serious human health risks and outcomes;

   d.     PFOA and/or PFOS caused Plaintiff's injury.

17

88.    Defendants knew of these risks associated with PFOA and PFOS and failed to use reasonable care in the design of its AFFF products.

89.    AFFF containing PFOA and/or PFOS poses greater danger to human health than would be expected by ordinary persons such as the Plaintiff.

90.    At all times, Defendants could make AFFF and that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent the Plaintiff's injury.

91.    The risks posed by PFAS-containing AFFF far outweigh the products' utility as a flame-control chemical.

92.    The likelihood that users and bystanders including Plaintiff would be exposed to PFOA and/or PFOS-containing AFFF and the gravity of that exposure far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

93.    The likelihood that users and bystanders including Plaintiff would be exposed to PFOA and/or PFOS-containing and the gravity of that exposure far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

94.    Upon information and belief, users and consumers of Fluorosurfactant Products relied on Defendants' implied warranty that their AFFF and/or products were safe for use in outdoor fire emergency scenarios and fire control exercise.

95.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, Plaintiff has suffered, and continues to suffer, personal injury and seeks to recover all available damages.

96.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause personal injuries to individuals. Defendants committed

each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY-
## FAILURE TO WARN

97.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

98.     As a manufacturer of PFAS-containing AFFF, each Defendant had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff.

99.     PFAS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a.     PFOA and PFOS escape from AFFF when used, stored, and/or handled in a foreseeable and intended manner;

b.     Individuals such as Plaintiff may be exposed to PFOA and PFOS released from AFFF via inhalation, ingestion, and skin absorption;

c.     Exposure to PFOA and/or PFOS is associated with serious human health risks and outcomes;

d.     PFOA and/or PFOS caused Plaintiff's injury.

100.     Defendants knew of the health risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with these products or an instruction that would have allowed Plaintiff to avoid exposure and injury.

19

101.    Despite Defendants' knowledge of the human health hazards associated with the use of PFAS-containing AFFF, Defendants failed to issue any warnings, instructions, recalls, or advice regarding these products to Plaintiff, customers, governmental agencies, or the public.

102.    Plaintiff would have heeded legally adequate warnings or would have taken steps to prevent potential exposure and injury.

103.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Plaintiff has suffered, and continues to suffer, personal injury and seeks to recover all available damages.

104.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause personal injuries to individuals. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others.

## THIRD CAUSE OF ACTION
### NEGLIGENCE

105.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

106.    As a manufacturer and seller of PFAS-containing AFFF, each Defendant owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

107.    Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and that users, handlers, and bystanders were exposed to PFOA and PFOS.

108.    Even though Defendants knew that individuals who store, handle, and use AFFF and may be exposed to PFOA and PFOS, which are toxic and are possible carcinogens, Defendants negligently:

a.    Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing AFFF;

b.    Issued instructions on how AFFF should be used and disposed of, thus improperly permitting individuals to be exposed to PFOA and/or PFOS;

c.    Failed to recall and/or warn the users of AFFF of the dangers of personal injury standard use and disposal of these products; and

d.    Failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of these products.

109.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing AFFF, the Plaintiff has suffered, and continues to suffer, personal injury and seeks to recover all available damages.

110.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause personal injuries to individuals. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others.

## FOURTH CAUSE OF ACTION
### FRAUDULENT TRANSFER
### (Against DuPont and Chemours only)

111.    Plaintiff realleges and reaffirms each and every allegation set forth in all proceeding paragraphs as if fully restated in this cause of action.

112.     Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

113.     Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

114.     Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

115.     In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

116.     Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

117.     As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

118.     DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were

unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

119.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

120.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

121.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## TOLLING OF THE STATUTE OF LIMITATIONS

122.    Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### DISCOVERY RULE TOLLING

123.    Plaintiff did not know, nor could Plaintiff reasonably have discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiff in the vicinity of AFFF use. Since Plaintiff could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants'

fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

124.    Plaintiff had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health until very recently.

125.    During the relevant times, Plaintiff did not possess specialized scientific or medical knowledge. Plaintiff did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiff earlier would not have disclosed that AFFF could cause personal injury.

126.    Wherefore, all applicable statutes of limitations pertaining to Plaintiff's claims have been tolled by the operation of the discovery rule.

127.    Rather than disclose critical safety and health information regarding its AFFF and Fluorosurfactant Products, Defendants have consistently and falsely represented the safety of AFFF products.

128.    This fraudulent concealment continues to the present day.

129.    Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes of limitations have also been tolled.

**ESTOPPEL**

130.    Defendants were under a continuous duty to consumers, end users, and other persons, such as Plaintiff, coming into contact with their Fluorosurfactant Products, to provide truthful and

reliable safety information concerning their products and the risks associated with their use, as well as exposure to AFFF.

131.    Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively concealed important safety information and warnings concerning AFFF and the health risks associated with the same.

132.    Wherefore, Defendants are estopped from relying on any statute of limitations in defense of this action.

## **PRAYER FOR RELIEF**

133.    Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

   a.  Compensatory damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others;

   b.  Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

   c.  Punitive damages;

   d.  Consequential damages;

   e.  Pre-judgment and post-judgment interest;

   f.  Attorney's fees; and

   g.  Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial pursuant to Rule of Civil Procedure 38.

Dated:  July 15, 2025

Respectfully submitted,

*/s/ Scott Summy*
**BARON & BUDD, P.C.**
Scott Summy (TX Bar 19507500)
ssummy@baronbudd.com
Holly Werkema (TX Bar 24081202)
hwerkema@baronbudd.com
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Fax: (214) 279-9915

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
Philip F. Cossich, Jr. (LA Bar No. 1788)
pcossich@cossichlaw.com
Christina M. Cossich (LA Bar No. 32407)
ccossich@cossichlaw.com
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

***Attorneys for Plaintiff***